UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

IAN GOOLSBY,

      Plaintiff,

  -v-                                                  16-CV-994-A
                                                      **ORDER**

CITY OF ELMIRA, et al.,

      Defendants.
_____

      *Pro se* plaintiff Ian Goolsby is a federal prisoner presently confined at the Federal Correctional Institution Allenwood Medium upon his conviction of one count of Possession of Heroin With Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 851, and one count of Possession of a Firearm in Furtherance of a Drug-Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).[1] Plaintiff Goolsby filed this action under 42 U.S.C. § 1983 while a federal pretrial detainee confined at the Livingston County Jail. Dkt. No. 8 (Amended Complaint). He alleged that he was falsely arrested and maliciously prosecuted, and that members of the City of Elmira Police Department conspired to arrest him and charge him with crimes he did not commit.

      In a January 24, 2017 Order (the "prior order"), the Court granted plaintiff Goolsby's request to proceed *in forma pauperis* and screened the Amended Complaint for sufficiency under 28 U.S.C §§ 1915(e)(2)(B) and 1915A(a). Dkt. No. 12. The Court stayed plaintiff's false arrest claims against defendants Oakes, Gunn,

---

[1] *United States v. Goolsby*, 6:15-CR-06095-001-CJS, Docket No. 96, Judgment (May 2, 2017).

1

Miller, Johnson and Shaw, pursuant to *Wallace v. Kato*, 549 U.S. 384 (2007), pending a determination of his appeal of his criminal conviction before the United States Court of Appeals for the Second Circuit. Plaintiff's due process, malicious prosecution, and conspiracy claims against Oakes, Gunn, Miller, Johnson and Shaw were all dismissed without prejudice pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), and his claims against the City of Elmira, Chief Kane and Sergeant Packard were dismissed with prejudice. The only remaining claims are the false arrest claims stayed under *Wallace v. Keto*.

Plaintiff Goolsby has filed a Motion to Amend, Dkt. No. 19, and a Motion to Appoint Counsel. Dkt. No. 20. For the limited purpose of reviewing the proposed amendments to plaintiff's false arrest claims, the stay of case is lifted. For the reasons stated below, the Court finds plaintiff's Motion to Amend as to his false arrest claims only[2] should be granted. The stay is restored.

## DISCUSSION

**I.** **Legal Standard**

In evaluating the Second Amended Complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff Goolsby's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even

---

[2] To the extent Plaintiff's Motion to Amend asks the Court to revisit claims that were previously dismissed, including conditions of confinement (cold cell), strip search, and conspiracy claims, the Court declines to do so because the allegations in the Second Amended Complaint do not set forth cognizable claims under the Fourth and Fourteenth Amendments.

2

pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

## II. Plaintiff's Amended Claims[3]

In the Second Amended Complaint, plaintiff Goolsby alleges that, at about 10:00 a.m. on March 11, 2015, he was pulled over in a rental car in the City of Elmira, New York by Elmira Police Officer David Miller. Dkt. No. 9-1, p. 5. Contrary to the allegations of the Amended Complaint, the Second Amended Complaint states that plaintiff had not committed any vehicle or traffic infraction. *Id.* During the stop, Officer Miller asserted that he smelled marijuana as a pretext to search the plaintiff's vehicle. *Id.* Several officers responded to the scene and became "more

---

[3] The recitation of facts is drawn exclusively from the Second Amended Complaint, the contents of which must be accepted as true for purposes of this initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). *See Erickson*, 551 U.S. at 93-94 (citing *Bell Atlantic Corp.*, 550 U.S. at 555-56).

3

aggressive" with plaintiff, causing him to "fear [for] his personal safety." *Id.* at 5-6. Miller performed a pat search of plaintiff, who was then placed in the back of a police vehicle, subsequently arrested, and transported to the Elmira Police Headquarters for booking. *Id.* at 6.

Plaintiff was then questioned by Elmira Police Investigator Oakes, who asked him about the owner of the vehicle and informed plaintiff that they were investigating a firearm. Plaintiff declined to answer any questions. *Id.* Inv. Oakes then instructed Officer Brook Shaw to strip search plaintiff. *Id.* Plaintiff initially refused to remove his clothes, arguing that he would be strip searched at the Chemung County Jail upon admission. *Id.* Officer Shaw then extended a retractable baton and commanded plaintiff to remove his clothes, at which point he complied. *Id.* at 6-7. Shaw put his fingers in plaintiff's rectum, causing plaintiff to jump, which prompted the laughter of Oakes and Shaw and their comment that they thought "he liked things put in his (expletive)." *Id.* at 7.

Plaintiff Goolsby was then placed in a "bitter cold" basement cell for over three hours without any food, water, a blanket, or his sweater. *Id.* Inv. Oakes contacted ATF Agent, Gerard O'Sullivan, and "the two colluded for federal authorities to take over the case in lieu of state prosecution." *Id.* Nonetheless, a state preliminary hearing was held, at which time Officer Miller testified that after observing plaintiff stop at a stop sign and then signal his intent to turn, Miller executed a traffic stop based on the failure to signal 100 feet prior to the turn. *Id.* at 8. Miller further testified that he smelled the scent of burnt marijuana and decided to search the vehicle. *Id.* The search revealed a shoebox containing a firearm, a

magazine with ammunition, marijuana packaging inside a plastic bag, and marijuana residue on the carpet between the passenger seat and the door. *Id.*

On March 25, 2017, Agent O'Sullivan filed a federal criminal complaint in this Court, and based on his accompanying affirmation, Magistrate Judge Johnathan Feldman found probable cause to believe that the crimes listed in the complaint were committed by plaintiff. *Id.* at 9. Plaintiff was brought to Rochester, New York where he was questioned by Agent O'Sullivan and required to provide a DNA sample. *Id.* at 10. Plaintiff told O'Sullivan that there were no firearms nor drugs in his vehicle, that "Oakes was out to get him," and that if anything "was found in the vehicle, his passenger had it." *Id.* O'Sullivan responded, "if you are lying, it's just a matter of black and white to me, no pun intended." *Id.* at 11. Plaintiff's lawyer entered the room at this point and ended the interview. *Id.*

The passenger in Plaintiff Goolsby's vehicle at the time of the traffic stop, Susan Henry, was later interviewed by Elmira Police Officer Gunn. *Id.* Henry told Gunn that the plaintiff visited her house on March 11, 2015 and left a firearm and heroin at that location. *Id.* Henry then gave the plaintiff the 13 rounds of ammunition that he had left there on a prior occasion. *Id.* Henry later recanted these statements to Assistant United States Attorney ("AUSA") Charles Moynihan and Agent O'Sullivan. *Id.* at 11. Officer Gunn, who was also Susan Henry's friend, exchanged texted message with Henry prior to plaintiff's arrest. *Id.* at 13. At some point, Agent O'Sullivan visited the maternal grandmother of plaintiff's children. *Id.* at 12. He told her that plaintiff was "going away for very long time," and that his son "would grow up to hate him." *Id.* O'Sullivan also directed her to have her daughter,

who had originally rented the vehicle in which plaintiff was stopped, contact him "or else he would have [Brown] locked up." *Id.*

Meanwhile, Chemung County Inv. Oakes conducted a separate investigation of plaintiff for welfare fraud, and continually "harass[ed]" and questioned plaintiff's current girlfriend about his "ongoing federal charges." *Id.* A Chemung County Jail officer, John Doe, also "disseminate[d]" plaintiff's jail calls "without judicial process" or consent. *Id.* at 13. In January 2017, Captain John Doe "disseminated" plaintiff's Livingston County Jail calls in a similarly unauthorized manner. *Id.* at 14. Plaintiff's Chemung Country Jail calls were later played by AUSA Moynihan for an individual who was "not a party to any of the calls." *Id.* At plaintiff's trial, defendants Oakes, Miller, and Johnson offered false testimony, and plaintiff was convicted of the charges and sentenced to 300 months in prison. *Id.*

### A. False Arrest

Plaintiff Goolsby's allegations have been liberally construed to allege a claim of false arrest to the extent that the plaintiff alleges he was arrested by defendants without probable cause.[4] As the Court previously noted, Dkt. No. 12 at p. 10, the Supreme Court held in *Wallace v. Kato*, that:

> If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.

---

[4] Probable cause "is a complete defense to an action for false arrest." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause"), *cert. denied*, 517 U.S. 1189 (1996). Moreover, an indictment on the charges "creates a rebuttable presumption of probable cause." *Wiggins v. Buffalo Police Dep't*, 320 F. Supp. 2d 53, 57 (W.D.N.Y. 2004).

549 U.S. 384, 393-94 (2007) (citations omitted).

Plaintiff Goolsby has been convicted of the offenses for which he was arrested in March 2015 and his appeal from that conviction is pending. Therefore, the Court stayed his false arrest claims, recognizing "the need to protect false arrest claims from potential time bars where a criminal appeal is pending." *Othman v. City of New York*, No. 13–CV–4771 (NGG) (RLM), 2015 WL 1915754, at * 5 (E.D.N.Y., April 27, 2015) (Adopting Report & Recommendation); *Neason v. Moran*, No. 09–CV–6231CJS, 2009 WL 3596441, at *4 (W.D.N.Y. Oct. 29, 2009) (finding a stay "pending the final resolution of plaintiff's criminal case" to be the better course, despite potential for delay, "otherwise risking that plaintiff may be foreclosed from bringing his false arrest claim by the running out of the statute of limitations"). The Court further noted that if plaintiff's conviction is upheld on appeal, and his false arrest claim "would impugn [the] conviction, *Heck* will require dismissal; otherwise the [false arrest] claim will proceed, absent some other bar to suit." *Wallace*, 549 U.S. at 394.

Plaintiff Goolsby's proposed Second Amended Complaint contains allegations similar those set forth in his Amended Complaint but omits some extraneous information and is a more coherent in general. The Court therefore grants the Motion to Amend as to the false arrest claims only. The stay of these claims is hereby restored, pursuant to *Wallace*, in light of plaintiff's most recent letter stating that his criminal appeal is still pending. Dkt. No. 23.

Plaintiff is DIRECTED to file a letter with the Clerk of Court every three months indicating the status of his appeal in accordance with the Court's prior order.

7

He is further directed to contact the Clerk of Court immediately upon the disposition of his appeal by the United States Court of Appeals for the Second Circuit. At that time, the Court will determine the appropriateness of lifting the stay and whether plaintiff's false arrest claims may proceed to service.

### B. Motion to Appoint Counsel

Plaintiff Goolsby moves for the appointment of counsel claiming that he has limited knowledge of the law, that the issues in this case are complex, and that he suffers from a medical condition that severely limits his ability to conduct research. Dkt. No. 20. In deciding whether to appoint counsel, *see* 28 U.S.C. § 1915(e)(1), the Court must determine first whether the indigent's position seems likely to be of substance. Even if the claim meets this threshold requirement, the Court shall consider then a number of other factors in making its determination. *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir. 1986). Based on the Court's assessment of the plaintiff's claims, there is no basis to find at this time that they are likely to be of substance. Accordingly, plaintiff's motion to appoint counsel is denied without prejudice.

### CONCLUSION

Plaintiff Ian Goolsby's Motion to Amend the Amended Complaint, Dkt. No. 19, is GRANTED as to his false arrest claims against defendants Oakes, Gunn, Miller, Johnson and Shaw only, and this case is again stayed pursuant to *Wallace v. Kato*, 549 U.S. 384 (2007), pending the resolution of plaintiff's appeal from his conviction. Plaintiff's Motion to Appoint Counsel is DENIED without prejudice.

Plaintiff Goolsby is again ORDERED to file a letter with the Clerk of Court every three months from the date of entry of this Order indicating the status of his appeal and to immediately report the disposition of his appeal by the United States Court of Appeals for the Second Circuit. At that time, the Court will determine the appropriateness of lifting the stay and whether plaintiff's claims may proceed.

**SO ORDERED.**

_s/Richard J. Arcara_
Hon. Richard J. Arcara
United States District Judge

DATED: January 25, 2019
          Buffalo, NY